F3V3SANS                        Sentence

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

              v.                        13 CR 811 (ALC)

DAVID SANTIAGO,

                Defendant.

------------------------------x

                                    New York, N.Y.
                                    March 31, 2015
                                    3:00 p.m.


Before:

                HON. ANDREW L. CARTER,

                                    District Judge


                      APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
JASON MASIMORE
     Assistant United States Attorney

FREEMAN, NOOTER & GINSBERG
     Attorneys for Defendant
LEE A. GINSBERG

ALSO PRESENT:  Allyson Feliz, U.S. Probation
```

F3V3SANS                        Sentence

1          THE DEPUTY CLERK:  Criminal cause for a sentencing in

2     case number 13 CR 811.  United States v. David Santiago.

3     Counsel, please state your appearance.  For the government?

4          MR. MASIMORE:  Good afternoon, your Honor.  Jason

5     Masimore for the government, and with me here at counsel table

6     is Probation Officer Allyson Felix.

7          THE DEPUTY CLERK:  For the defendant?

8          MR. GINSBERG:  Good afternoon, your Honor.  Lee

9     Ginsberg appearing for David Santiago.

10         THE COURT:  Good afternoon, Mr. Santiago.  We're here

11    today to impose sentence in the case of United States v. David

12    Santiago.  In preparation for the proceeding, I've reviewed the

13    presentence report, two letter submissions, one with many

14    attachments from defense counsel, and a submission from the

15    government.

16         Is there anything else that I should have?

17         MR. MASIMORE:  Not from the government.  Thank you.

18         MR. GINSBERG:  No, I don't believe so, your Honor.

19         THE COURT:  Again, I accept Mr. Santiago's guilty

20    plea.

21         Let me just find out, Mr. Santiago, have you reviewed

22    the presentence report and had a chance to discuss it with your

23    attorney?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  Counsel for the defense, are there any

F3V3SANS                        Sentence

1    objections to the presentence report?

2              MR. GINSBERG:  Your Honor, I raised one issue about a

3    misdemeanor that was 10 years old, but I think frankly in

4    reviewing how I posed it, I would rather raise it more on the

5    3553, because technically it is appropriately counted for

6    purposes of the criminal history.

7              THE COURT:  Counsel for the government, any objections

8    to the presentence report?

9              MR. MASIMORE:  No, I also have no objections.  Thank

10   you.

11             THE COURT:  Although I'm no longer required to follow

12   the sentencing guidelines, I'm still required to consider the

13   guidelines in imposing sentence, and to do so it is necessary

14   that we accurately calculate the guideline sentence range.

15   I've done my own independent evaluation of the guidelines, and

16   there appears to be no objection to the guideline range as set

17   forth in the presentence report.

18             Let me just confirm that.  Any objection to the

19   guideline range set forth in the presentence report by the

20   government or the defense?

21             MR. MASIMORE:  No, your Honor.

22             MR. GINSBERG:  No, your Honor.

23             THE COURT:  Based on my own independent evaluation and

24   based on the lack of any objection, I adopt the guideline range

25   as set forth in the presentence report which is 120 months for

 1    Count One, and 120 to 150 months for Count Two.

 2            Counsel for the defense, are you ready for sentencing?

 3            MR. GINSBERG:  Yes, your Honor.

 4            THE COURT:  Mr. Santiago, are you ready for

 5    sentencing?

 6            THE DEFENDANT:  Yes, your Honor.

 7            THE COURT:  Counsel for the government, are you ready

 8    for sentencing?

 9            MR. MASIMORE:  We are.

10            THE COURT:  So the record is clear, I adopt the

11    guideline range that's set forth in the presentence report.

12    And let me hear from the parties regarding any issues they want

13    to raise regarding sentence, starting with counsel for the

14    defense.

15            MR. GINSBERG:  Thank you, your Honor.  You prefer that

16    I remain seated or can I stand?

17            THE COURT:  That's fine.  You can remain seated if

18    you'd like.

19            MR. GINSBERG:  Your Honor, first I think there is some

20    more general issues before I get to the specific issues related

21    to Mr. Santiago.  I believe there was an issue that was raised

22    at the sentence yesterday that also related to Mr. Santiago,

23    and that is the government in its submission indicated that one

24    of the defendants in this case at some point post-arrest had

25    provided statements which implicated my client and others in

F3V3SANS                        Sentence

this case in crimes that are not charged in this case, nor have
they been convicted of.  They forthrightly indicated that
subsequently, that that person in open court recanted, and I
think they also indicated that if he decided to testify about
that, waived his Fifth Amendment privilege, he would likely
continue with the recantation.

So, it exists in terms of the fact that he made that
statement, but since he recanted it, and the government on its
own believes he would continue with that, it seems to me that
there is little basis for that to be included in a
consideration, which I guess would be under aggravating factors
under 3553.

I'm not asking for a Fatico hearing, but given the way
the circumstances happened, it may be fair to say that if that
person was used alone, for the moment, it wouldn't meet the
preponderance standard at sentencing, because he made a
statement and then he recanted the statement.

In any event, my understanding is that when this was
raised yesterday, that your Honor indicated that you believed
that you had a right to consider it, but you were not
considering it as a factor in your sentencing.  If that's the
case, I don't have anything further to say about it.
Otherwise, we can discuss that.

I don't want to go on and on about it if your Honor
has made a determination, because it is essentially the same

F3V3SANS                          Sentence

 1     issue.  It is just a different defendant.

 2              THE COURT:  Okay.  Let me hear from the government.

 3              MR. MASIMORE:  Thank you, your Honor.  Yes, that is

 4     the same issue from yesterday.  I think the Court would be

 5     entitled to determine on its own whether the statements made to

 6     the law enforcement officers, which I understand there is not a

 7     dispute that such statements in sum and substance were made to

 8     law enforcement officers, whether that's more credible than the

 9     in-court recanting that the Court was present for.  And I am

10     not sure if Mr. Ginsberg was present for.  It is not really

11     relevant.

12              But basically everybody in the case was present for

13     this when Mr. Maccow stood up, we were down in courtroom 110,

14     at various times and even faced members of the community to

15     assure them he hadn't said what he had been reported -- at that

16     point hadn't even been reported as saying.  It hadn't been part

17     of discovery.  Nobody actually in the case had known about it

18     except for what Mr. Maccow had said.

19              Your Honor, I think there are, like with the case

20     yesterday, yesterday I'd argued that the statements to the

21     officers were corroborated by items found in Mr. Vallejo's

22     apartment.  I think that same corroboration holds true today.

23     In addition, it is an example of the co-defendant making

24     statements about this particular defendant that are consistent

25     with the prior conviction for a violent home invasion

1    robberies.  So I think there is corroboration there.

2            It is offered by the government in support of sort of

3    a counter argument.  It is a counter argument to the defense

4    argument that the criminal history overstates sort of the

5    history and characteristics of this defendant.

6            I think under the case law, the Court is entitled to

7    review this evidence and to consider it.  I think it is not

8    necessary to have a factual hearing to do so, because I don't

9    think there are any facts in dispute in terms of what was said

10   when.  And the co-defendant, we would stipulate, is likely, if

11   he were to take the stand, to continue denying these things in

12   front of this defendant and in front of the community.

13           THE COURT:  Let me just ask get some clarification

14   from the government.  I'm looking at the government's

15   submission on page three and I'm not sure if these are

16   typographical errors.  I want to make sure I'm clear on what it

17   is that you're claiming that Mr. Maccow indicated.

18           Looking at page three, toward the middle of that first

19   paragraph, for example, Maccow confessed he had personally

20   participated in a home invasion robbery in upper Manhattan in

21   2011.  Prior to the home invasion, Maccow stated he and others

22   carried out a carjacking of the victim during which they stole

23   the victim's keys.  Maccow then carried out a home invasion

24   robbery of the defendant's residence with co-defendants Martin,

25   Vallejo, etc.

F3V3SANS                    Sentence

1              MR. MASIMORE:  That should be the victim's residence.

2    That is incorrect.

3              THE COURT:  In which they used the defendant's keys.

4    I assume that should be the victim's keys as well?

5              MR. MASIMORE:  Correct.  There was a carjacking.

6    During the carjacking they stole the victim's keys, and later a

7    crew went to the apartment of the victim, used the victim's

8    keys to enter that apartment.  That's different than the home

9    invasion robbery that was detailed in the memorandum with

10   respect to Mr. Vallejo.

11             THE COURT:  It does seem to me that I certainly have

12   the authority to consider that, especially in light of the

13   defense request that I consider that the criminal history

14   category that he's in substantially overstates the seriousness

15   of his criminal history category or is just a factor that I

16   should consider in terms of the 3553 factors.  It certainly

17   seems it is appropriate in response to that for me to consider

18   that.

19             However, I do have some reservations again about

20   giving this any weight in which basically it seems that the

21   government has taken the position that Mr. Maccow lied when

22   Mr. Maccow was in court, and my recollection is he said

23   something to the effect that he made statements but he was

24   drunk at the time he made them and something to that effect.

25   But, the government's position is that Mr. Maccow lied.  And if

he were to waive his Fifth Amendment privilege against

self-incrimination, he would come here and lie.

        With those sort of credibility concerns, I understand

the government's position that perhaps it is a declaration

against penal interest and the like for Mr. Maccow at the time

of his arrest to say he was involved in additional robberies.

Certainly it doesn't seem it would be against his penal

interest to implicate others in there.

        With those sort of vagaries regarding his credibility

in general, I'm not going to give that any weight in terms of

imposing sentence here.  But I have considered it.  But in

light of the credibility issues that I think are rampant with

Mr. Maccow, based on what the government has said, I'm not

going to give that any weight.

        Go ahead.  Is there anything else you wanted to add?

        MR. GINSBERG:  Not on that issue, your Honor.  There

is a second issue that arises from a statement that was made in

the probation report, and I addressed it in my written

submission.  In the PSR, it was indicated by the probation

department on page 20, paragraph 108, essentially that the

Court could consider in determining a sentence outside of the

guideline range, in this case the suggestion is a higher

sentence, could consider the fact that the defendant, and I

think all of the defendants in this case, were permitted to

plead guilty to essentially burglary offenses, not a narcotics

offense.  For Mr. Santiago particularly, the probation points

out that had he been required to plead guilty to the narcotics

charge, he would likely have been a career criminal, which

would have raised his guidelines.  Which is correct, had that

happened.

My response in writing to the probation department and

to the Court is that you can say that, make that same argument

in many, many cases.  There are so many cases that depend on

plea negotiations where the government makes a determination

one way or the other whether to charge a crime, for example,

something that's more analogous on drug cases, when it could be

a (b)(1)(A) or a (b)(1)(B), there is a 10 or five year

mandatory minimum and the government decides to charge

(b)(1)(C), which means there is no longer a mandatory minimum

and the possible sentence is zero to 20.

The Court could, I suppose, you could make that

argument in every case or the probation department could say,

well, that should be considered as a factor, because it was

originally a five year minimum which the defendant would have

had to face, and he is no longer facing that, but we think the

Court should consider it.  So I think that's one way to look at

it.

The other way to I think look at this is that in the

first instance, it is the government that presents the evidence

to the grand jury, and the grand jury returns indictments based

upon largely what the government puts before it, especially in

the federal system, as it is rarely the case that there is a

defense in the grand jury or the defendant testifies.  So, in

every indictment, it is structured based upon what the

government wants to place before the grand jury.

So in this case, it was structured with the burglary

charge and narcotics charges.  It didn't necessarily have to

be.  It could have been structured as a burglary case, just

like in the many cases where there are Hobbs Act robbery

charges where individuals rob apartments of drug dealers, and

they take drugs out, that could be charged as a Hobbs Act

robbery without being charged as a drug crime.  And then if

they obtain drugs, that could be used to calculate the

guideline, but it doesn't have to be, because there are other

ways to calculate the guideline.

So, the point here is that to go back and say because

the defendant essentially received the benefit of a plea to a

charge that doesn't make him a career offender, that should be

a consideration for the Court in determining whether there

should be an upward departure.  I suspect if that's true, if

the Court believes that that's true, then that's the case in I

don't know what percentage of cases before the Court, but many.

Because they're driven by the ultimate plea which is initially

something that is determined in large part by what was in the

indictment.

F3V3SANS                        Sentence

1          So, while technically it's correct, I would ask the

2     Court not to give much credence to that in determining what the

3     ultimate sentence should be.

4          At the end of the day, it is my view, and I'll get to

5     it shortly, that this particular sentence for David Santiago

6     rests more on what his actual criminal history record is,

7     versus what he has done more in the recent past and family

8     issues, to decide what is a sentence that is sufficient but not

9     greater than necessary.  So, I wanted to address that issue at

10    the top rather than mix it in with all the other considerations

11    about Mr. Santiago.

12          THE COURT:  Hold on.  Can you just give me some

13    clarification.  It seems that the arguments that you're making

14    regarding this statement seem to be sort of pre-*Booker*

15    arguments.  These arguments in which you're using the term

16    "upward departure" and talking about the sentencing guidelines

17    and focusing on the career offender guidelines.  It seems that

18    post *Booker*, there are many things that I can consider that I

19    would not have been able to consider pre-*Booker*.  And under 18

20    U.S.C. 3553 I'm required to consider all of those factors

21    listed there, and they include the nature and circumstances of

22    the offense.  So it seems that I am perfectly justified in

23    considering that information.

24          And you stated in your letter, you mention talking

25    about the function of plea negotiations and I should not get

F3V3SANS                          Sentence

involved in plea negotiations and I should not be involved in

plea negotiations.  But by these arguments that you've been

making, it sounds as if you are asking me to get involved in

the plea negotiations sort of ex post facto and figure out what

these negotiations are.

        I want to make sure Mr. Santiago is clear, as was

indicated at the time that he pled guilty, is that at the time

he entered a plea of guilty, there is no promise what his

sentence will be.  Nor is there a promise as to what his

guideline range would be.  You had statements in your letter

saying the function of plea negotiations is to resolve the case

in a manner in which both parties believe there is an equitable

result.  Again, I am not going to get involved in plea

negotiations.  But ultimately, sentencing is my function.  And

anything that the parties may have been thinking about, again,

there are no guarantees.  There are no promises there.  And I

don't want to get involved in those sort of plea negotiations.

        So I looked when the probation department indicated on

page 20 that these were factors that may warrant a sentence

outside of the advisory guideline system.  They didn't indicate

that that was a particular upward departure versus a variance

under the guidelines or whatever the case may be.  But those

are just things that I can consider.  Those relate to the

nature and circumstances of the offense and with his criminal

history.  Those also relate to the personal history and

1    characteristics of the defendant that I can consider those

2    things.

3           If your concern is that I am going to make some sort

4    of adjustment to a particular guideline range based on this,

5    while I suppose I could, again, I think those are arguments

6    that you're making are sort of pre-*Booker* arguments.

7           But I wanted to make sure I'm clear on what your

8    position is.  If your position is that I should not

9    automatically sentence him as if he is a career offender,

10   because if the plea agreement was different he would be a

11   career offender.  I get that.  I'm not going to do that based

12   on that.  But I do have to consider everything, and those are

13   some factors that I can consider.

14           MR. GINSBERG:  I understand.  And your Honor I think

15   assesses my argument correctly.  I'm not saying you can't,

16   because, frankly, under 3553, and the more litigation there is

17   about it, almost anything can be considered as long as there is

18   some kind of a legitimate basis for it.  So I agree, your Honor

19   could consider it.

20           And the final thing I would point out is that in

21   allowing the plea to be to the charges that were in the plea

22   agreement, and not making it a drug plea, the government

23   still -- and we agreed to it in the plea agreement -- utilized

24   the narcotics guidelines for purposes of the base offense

25   level.  So while my client wasn't made a career criminal

F3V3SANS                        Sentence

offender by pleading to the drug charge, the use of the

narcotics base offense level versus potentially converting the

value of the prescription drugs that were taken or any money

that was taken into loss factors and then going into the fraud

guideline which would have been lower, which is something I at

least did discuss with the government, could be considered the

other way.

          So, what I'm really saying is this is not the only way

that allowing the defendant to plead to a burglary as opposed

to a crime that would have made him a career offender should be

viewed, because there are so many other factors that also could

have happened.  And your Honor could consider it, frankly.  If

your Honor wanted to consider the fact that the guidelines are

driven largely in this case based upon drugs, as opposed to the

value of the actual loss, and that value would have had a much

lower guideline, your Honor is entitled to consider that as

well.  So it is just the counter balance to what was put forth

by the probation department.

          THE COURT:  Let me hear from the government on this

point real quick.

          MR. MASIMORE:  Your Honor, I don't think that defense

counsel is disputing that, as a legal matter, the Court can

consider what alternate criminal history and guidelines could

have been calculated had the plea been structured differently.

So I don't think there is anything there on the record.  I

F3V3SANS                        Sentence

think the government's main point is regardless of what the

Court considers specifically, it is faced with sentencing a

defendant with a very significant violent criminal history who,

notwithstanding that violent criminal history and previous

interactions with the law, the justice system, and being on

parole or probation, still continued in the course of conduct

that we're sitting here today to impose sentencing on.  I think

that's the overarching principle.  I don't think there is any

dispute.

        I would urge your Honor, to the extent paragraph 108

of the presentence investigation report is actually a pretty

good rebuttal to the defendant's argument for considering his

criminal history category as understated, perhaps it could be

useful there.

        THE COURT:  Go ahead.  You may continue.

        MR. GINSBERG:  Thank you.  One more general point I

guess that may have been raised before, is the effort on behalf

of defense counsel to have in the plea agreement a reduction

for a global plea, which is not usually done in the Southern

District, but is more commonly done -- I should say is done on

a not-infrequent basis in the Eastern District.  And during

plea negotiations, the government said, and again accurately

reported in their response that they believed it was a

permissible argument for counsel to make but they didn't

necessarily agree that the Court should give any consideration

1    for the fact that most of the defendants pled guilty at about

2    the same time after meetings with the government, group

3    meetings with the government by defense counsel to try to get

4    the best plea offer and to try to make it a little better for

5    the defendants, because a number of them were coming in

6    together.

7          The government's argument is that one reason the Court

8    shouldn't consider that, whether we call it a reduction by a

9    point or a 3553 factor, is because essentially I think they're

10   saying it is just as likely that the defendants were not

11   pleading guilty for a long time because a number of them were

12   trying to prevent others from cooperating, and that's what held

13   the group together, as opposed to a group of defendants saying

14   we think that if we hold out together for a better plea, and we

15   all go to the government at the same time, we may get some

16   additional consideration.

17         So on that basis, I ask your Honor to consider that,

18   as you said before, as you can consider many other kinds of

19   factors under 3553.  The fact is most of the defendants did

20   plead guilty at or about the at the same time.  Of course one

21   of the reasons that drove that, I'm not missing the point that

22   a trial date was looming, and often defendants wait to see

23   what's going to happen as close to the trial date as they can

24   without sort of forfeiting what they believe is their last best

25   offer.  But it is just something that I would ask the Court to

F3V3SANS                          Sentence

also consider, particularly because I know even though I'm not

asking for credit for myself, we put a lot of effort in on

behalf of my client and by other lawyers asking us to speak to

the government to try to get an agreement on that, which we

weren't able to do.  But those are the more generic points.

          I think the balance of my argument and I think what

the heart of this sentence is about has to do with my client's

unenviable prior criminal history record, versus to some large

degree behavior of his over the last year and a half or so

while he's been in pretrial custody at the MCC.  And the reason

I think that that's significant is that most defendants who are

being held at the MCC and the MDC for lengthy periods of time

pretrial and then plead, in my experience at least, do very

little or take very few opportunities to improve themselves.

There aren't lots of courses.  It is not like a sentencing

institution where there are much more opportunities.  To some

degree they are limited, although I learned through

Mr. Santiago there were more opportunities than I was aware of.

And he has thrown himself into that completely.

          Some of the courses that he took and some of the

certificates are not the most significant things in the world.

Learning about something in zoology or some historical thing

doesn't mean his life is going to change.  I think what it

means in the whole context of what he did while he was in jail

is that he was spending time trying to learn things or be

F3V3SANS                    Sentence

occupied with something of value, rather than sitting in the

jail, talking to other inmates, or causing trouble, or doing

nothing and just letting time pass by.

        But more than the programs that he completed, and

there are a lot of them that are sort of general in nature, may

not have lasted very long, I think there are a few that are

quite significant.  And that is the fact that he obtained his

GED.  Which is, again, in my experience, done by some

defendants, but not that often.  Many of them don't need to

because they have degrees, but there's plenty of them who could

use a GED but just don't make the effort.  Some of them are

just not capable of doing the work, but they don't even make

the effort to try to go to classes and learn and see if they

can.  Mr. Santiago did that.  And that's not just an hour or

two hours here and there to try to impress a judge at the time

of sentence.  That's I believe an effort taken with everything

else to begin to do something to change one's life.

        And take it along with the anger management program

which I think is also something significant, because I think

most defendants, incarcerated, whether I guess in federal jail

or in state jail, often have anger problems and issues or

related issues.  And without dealing with those anger issues,

when they are released, there is a good chance they're going to

continue to have those anger issues which could easily lead to

future criminal conduct.  But he did take the opportunity to

F3V3SANS                         Sentence

take that program.

In addition, he involved himself in this -- the
acronym is GOGI program, which involves essentially a
self-awareness program which teaches the inmates about decision
making, about being able to publicly connect with other people
in an appropriate and proper way, about writing things that
they may have to use as skills in their future, and about
speaking in front of other people in public about things that
they've written.

That is, frankly, the first client I've had who has
participated in that program.  My client asked me to send the
Court a letter invitation to a program that was put on a few
weeks ago, which I did.  And before I did that, I contacted
Adam Johnson at the MCC, the head of the legal department,
because, first of all, I wanted to make sure I understood what
the program was.  And secondly, I certainly didn't want to send
a letter to a federal judge inviting him to attend something
like this if it was an inappropriate thing to do based upon the
bureau of prisons policies, and he said no, it isn't.  It is
permissible.  He even indicated he was aware that one or more
of the judges had been contacted.  I don't know if anybody
attended.

But, those programs are not programs that are directed
at just taking Mr. Santiago out of his unit for an hour to
learn about zebras running around in the wild.  Those programs

are directed towards an individual who has not done so well in

his life, who has had problems, childhood issues, but more

importantly, criminal conduct problems, and repeated them.  And

knows that he needs to do something to move away from that.

And we never know at the time of sentence, and I don't

get to make the determinations of sentences.  Judges do.  But

none of us when we're in court at the time of sentence know

whether the efforts that the defendant has put in during a

certain period of time are an indication that he is beginning

to change his mindset, he is beginning to take the path of

rehabilitation, and wants to become that different person.

Whether he can, he can achieve it, we also can't know.

But given the opportunity, David Santiago took the

path of opportunity to take all of these programs.  Which, to

begin with, is unlike most defendants.  And also, in many

cases, there is no -- in most cases there is no way to predict.

And especially, that's especially true with defendants who are

in custody and take no programs and do nothing in jail to

indicate to a Court that they're beginning to change their

lives.  Defendants who are out on bail have that opportunity,

they could get a job or continue their job or do things in the

community and come back at the time of sentence and say, Judge,

this is what I did, I'm trying to change.

Mr. Santiago had the opportunity in jail to do what

was offered to him, and he took the opportunity.  In almost

F3V3SANS                     Sentence

1    everything that was available, he did and he took.

2          Now, the cynical view of that would be he did it

3    simply to try to please the sentencing judge and hope that the

4    sentencing judge sees that he did all these things, and gives

5    him a sentence lower than the guidelines because of that.  But

6    he didn't really intend to help himself with that.

7          The more positive view, and the one I would ask your

8    Honor to look at and accept, is that for a long period of time

9    in jail, he took course after course after course, some that

10   are very significant towards changing his life.  And there

11   comes a time with anybody who has been involved in crime, or

12   most of them, where they finally get it.  Maybe somebody at 22,

13   maybe somebody at 30, maybe somebody later on.  And the hope

14   here is, and I think we can take something from all the

15   programs that Mr. Santiago has participated in, that he's doing

16   that.  Is that going to be sufficient when he's released from

17   jail to prevent him from being involved in future criminal

18   conduct?  I can't say that and none of us can say that.  But it

19   is an indicator.  And it is something we don't have very often

20   to be able to use.

21         And I understand the Court has to look at the specific

22   and general deterrence and seriousness of the crime.  The crime

23   was a series of burglaries where prescription narcotics were

24   stolen, generally, and then sold and turned into money.  So, it

25   was a crime really of obtaining financial benefit at the end of

the day in whatever form it would come in, whether from the

prescription drugs or if there was money at the pharmacy.

Deterrence, specific deterrence, there is no question

that my client, based on his prior behavior, and being in this

case, needs to have specific deterrence.  The question is how

much specific deterrence.  And general deterrence I think is an

even harder thing to predict, because there we're talking about

what message a particular sentence for a particular individual

in a particular kind of case essentially sends a message that

if you out there in the public get involved in this kind of

criminal conduct, this is the kind of sentence you're going to

face.

And ultimately, in this particular case, with these

particular factors, our view is that a sentence even at the

bottom of the guidelines, understanding the prior criminal

history, is more than sufficient.  That my client doesn't need

to be sentenced to 10 years in jail to have specific deterrence

on him to not commit future crimes.  I don't know that for a

fact.  But, we have to make some determinations about what's in

front of us.

I think significantly what's in front of us at the

moment is the criminal history, but the whole history since he

was incarcerated on this case.  I think for that reason, it

balances against the aggravating factors of the criminal

history and the nature of the crime.

1          We suggested in our submission to the Court that a

2     sentence of 70 months would be sufficient.  The Court may not

3     agree and may feel that's not enough of a specific deterrent.

4     It is still a significant sentence.  A 70-month sentence is not

5     one year, two years, three years.  It is still plenty of time

6     in jail.

7          Now, my client has put himself in a position different

8     than I think almost every other defendant in this case because

9     of his criminal history.  If not for the criminal history

10    category, he probably would be at 70 to 87 or somewhere in that

11    range.  But his criminal history drives him up to category V,

12    and it bumps him up to a higher category.  I think there is

13    some place, maybe not the 70 that I suggested, but there is

14    some place less than 120 that would be sufficient but not

15    greater than necessary.  And it would put his sentence more in

16    line with the other sentences that have been imposed and I

17    suspect may be imposed in this case, knowing as I do what the

18    roles of the other defendants were.

19         His role was maybe in the middle.  He's not a leader,

20    he is not a supervisor, and I'm not claiming he was a minimal

21    or minor participant.

22         I would ask your Honor to consider all of those

23    factors, the more global ones and the more specific ones that

24    relate to David Santiago, and sentence him outside and below

25    the guideline as was found by the Court.

1          Thank you, your Honor.

2          THE COURT:  As I've indicated, I've seen the defense

3     submission with many letters attached and certificates.  I note

4     there are some people in the audience.  I don't know if these

5     people are here for Mr. Santiago.

6          MR. GINSBERG:  They're all here.

7          THE COURT:  If you could give me a sense of who these

8     people are.

9          MR. GINSBERG:  They're family members and friends.

10    There is his son, his mother, his child's mother, aunts, uncle,

11    sister, nephew, nieces.  And they've been actively involved in

12    contacting me throughout the case as well.

13         THE COURT:  Thank you.  I have a few questions for

14    defense counsel based on what you've said.  As you've

15    indicated, I have to consider all the factors in 18 U.S.C.

16    3553, and one of the factors that jumps out at me in this case

17    is the need for specific deterrence.  While I certainly commend

18    Mr. Santiago for the courses that he's been taking in terms of

19    making productive use of his time while he's been in prison,

20    he's done that before.  In 2009, paragraph 78 of the

21    presentence report, "While incarcerated at Great Meadow

22    Correctional Facility, he was enrolled in the ASAT drug

23    treatment program and was able to remain sober for several

24    weeks even after he was incarcerated."  Paragraph 81 of the

25    presentence report says, again, "In 2009, while incarcerated at

F3V3SANS                    Sentence

1   Great Meadow Correctional Facility, Santiago successfully

2   completed courses in floor maintenance and tile installation."

3          So, unfortunately, my concern is not, as odd as this

4   sounds, how he does while he's in jail.  He seems to take

5   advantage of the opportunities afforded to him in jail.  The

6   real problem is what he does when he's out.  It seems, I know

7   you've made this argument that his criminal history category

8   substantially overrepresents the seriousness of his criminal

9   history and you speak specifically to a 2004 conviction.  But

10  it seems that since 2003 he hasn't been able to go a year and a

11  half without getting arrested, because that 2006 conviction,

12  his most recent conviction before this, was for conduct that

13  took place in 2003 prior to the 2004 arrest for sale of

14  marijuana.  Which kind of belies this whole notion that that

15  old conviction sort of overstates the seriousness of his

16  criminal record.  The fact that he was released on parole in

17  2010 after doing these admirable things while he was in prison

18  and less than a year and a half after that gets involved in

19  this string of burglaries causes me great concern.

20         He's on parole at the time or he's on supervision at

21  the time that these burglaries are being committed.  I haven't

22  seen anything indicating -- I don't know if there is a parole

23  hold at this point.

24         MR. GINSBERG:  I can tell you there is not.  I've been

25  in touch with the parole officer who recently changed.  There

F3V3SANS                        Sentence

isn't.  I don't know if they're going to lodge one or not.  But

certainly, I couldn't argue to the Court that there wouldn't be

a basis for it.

          THE COURT:  If there is no parole hold, which makes me

believe that while he was committing these burglaries, he was

regularly checking in with his parole officer.  Sort of giving

his parole officer, or his supervising officer, the impression

that he's trying hard and leading a law-abiding life while

going out at night and committing these burglaries.

          I have a real concern about specific deterrence.  I

know you're asking for 70 months.  He just finished doing 60

months.  Or at least his sentence was for five years.  And

again, within a year and a half, he gets involved in this.

          I take very seriously the letters of support that I've

received from his family and from his friends.  But my concern

is it seems many of these letters could have been written back

in 2006.  Obviously some of the children weren't born yet, but

these same letters could have been written then.  Many of these

same statements could have made in 2006 and in 2004.  And I'm

concerned about the need to make sure he actually gets it.

          I have no doubt that there is some intent while he's

in custody and there is some belief that he can get it

together.  The problem is once he gets released, he tends to

succumb to these temptations, and I'm really concerned about

that.

1          Again, looking at the specifics of his life, and what

2     he's done on his cases and what he did while he was in prison

3     before, I have no doubt from everything that I've seen that he

4     is someone who is capable of getting his life together.  And he

5     has a lot of community support, and I hope that he can do that.

6     But, as you've indicated, while we don't truly ever know

7     whether someone really gets the message, we certainly have

8     indicators in this case that he hasn't gotten the message yet.

9     And I'm really concerned about that.

10         Can you address that a little bit more, counsel?

11         MR. GINSBERG:  I can, your Honor.  I appreciate the

12    question.  You're right, we can't predict.  And I thought long

13    and hard before I suggested to the Court 70 months.  Which,

14    frankly, in my view, was the lowest I could I think reasonably

15    even suggest to the Court.  And as I said before, there may be

16    a number in between that number and his guidelines that's

17    appropriate.  But, part of the ability to change comes with

18    getting older, seeing your children start to grow up without

19    you, and realizing what that really means.

20         And also, unfortunately, many people, like

21    Mr. Santiago, make efforts and fall back and make efforts and

22    fall back.  One of his problems was drug use.  And that fed to

23    some degree into his inability to escape.  I'm not saying he

24    never would have done any of these other crimes, but he's had

25    these negative factors, as your Honor points out, that have

F3V3SANS                           Sentence

1    pulled him back to where he shouldn't have been.

2            But specific deterrence, which I said very candidly to

3    the Court before, has to be given in this case.  And

4    significant.  The question really is does it need to be six

5    years?  Does it need to be seven years?  Does it need to be

6    eight years?  Can he finally learn that lesson and when he gets

7    out of jail continue the path he's trying now in jail, with the

8    support he has, and with his knowledge, hopefully this time

9    that however much time he's sentenced to, when he gets out, if

10   he ever gets involved in anything again, basically, it's all

11   over for him.  His life is done, because the sentence would be

12   something that he doesn't even want to think about.  And in

13   federal court, we're more aware of that than in state court.

14   Whether this is the time, whether because he's older now is the

15   reason, I'm not sure.  But I know, I spent a lot of time with

16   him at the jail.  I tend to spend -- my wife says -- too much

17   time at the jail with my clients.  That's who I am and that's

18   why I do what I do. He's talked a lot to me about his family.

19   And he had another lawyer at the beginning of the case, and he

20   changed lawyers because he didn't feel that that lawyer was

21   really paying attention to him and what he wanted to do and not

22   coming to see him.  And he needed to speak to somebody about

23   some of these things.

24           I can't be the predicter of the future, but I think

25   that he can be specifically deterred, and the Court can feel

1    that a sufficient punishment has been given to him and sentence

2    him to something that is less than the advisory guideline.

3    Because the numbers between 70 and 120 are all big numbers, and

4    whether one year more or two years more is going to change the

5    way he thinks, I don't want to say it won't, but there comes a

6    point either you get it or you don't get it.  I'm not sure if

7    six years makes you get it or it doesn't and then seven years

8    does.  He's getting it.  And that amount of time in jail, a

9    six-year sentence, a seven-year sentence, takes him away from

10   his family for another serious period of time.  Takes him away

11   from his children, when one of them will be out of his teens

12   and a young adult.  And those things are significant to

13   anybody, even people who have committed multiple crimes.

14          So, I think that's the best answer I can give you

15   without trying to create something that I have no basis to say

16   to the Court, or I have no basis to know.  I can only tell you

17   from my experience with Mr. Santiago, and frankly my experience

18   with a number of his family members, and their interest in

19   what's going to happen to him, and what we can do for him.

20          THE COURT:  Okay.  So let me just ask you this then,

21   the follow up on that.  I understand your position in terms of

22   age.  But my recollection in the presentence report is that he

23   has a 14-year-old child and a seven-year-old child.

24          MR. GINSBERG:  I think 15 and seven, yes.

25          THE COURT:  At the time that he started getting

F3V3SANS                          Sentence

involved in this rash of burglaries, the children were

approximately 10 and two.  It seems that that's the point where

the realization should have struck.  It seems that's the point,

and certainly, it happens with people who end up involved in

the wrong side of the criminal justice system that many

individuals over time, they start to mature.  They get a little

older and they either stop committing crimes or they at least

start committing less serious crimes.

          I'm also concerned about the fact that the seriousness

of his offenses has increased over the years.  It hasn't gone

down.  It is not a situation in which he was 19 and wild out

there running around and doing some very violent things and

then got involved in forging checks and the like or something

like that.  It seems that the significance of the crimes that

he's been involved in has been increasing over the years

instead of decreasing, and that's a very troubling trend.

          Can you address that?

          MR. GINSBERG:  Well, in the instant case, which I

think gives your Honor pause, I think it can be viewed in a

number of ways.  I'm not saying it is a crime that could not

have engendered violence and wasn't harmful to the owners of

the pharmacy, the victims.  I think for him, for David

Santiago, it was driven by an opportunity to obtain money which

would have been the ultimate proceeds of the stealing of the

prescription drugs and something else.  And while it's not a

nice crime, it's driven by this need for money and his own

drugs, and I'm not sure if it puts it into a totally different

category.

        We know that there are crimes that on the face of it

absolutely are violent crimes given the nature of the crimes.

Shooting, serious assaults, things of that nature.  For him,

this was not what it was all about.  It was the opportunity to

get money for drugs and to live, because he wasn't working

regularly.  So while it is a serious crime, I'm not sure it

incrementally increased the kind of behavior he was involved

in.  I think it was a pattern of doing things that he wanted to

do for his benefit to get money to deal with his issues.

Fortunately, this wasn't a crime where somebody was hurt or

somebody was shot or something like that happened.

        And again, I am not saying that these kind of crimes

can't lead to that.  Certainly it could have.  Somebody could

have been a night watchman or working late.  I understand it.

But I don't think it is jumped up to another category where

he's becoming more dangerous.  I think his mental state about

the kind of things that he's doing has sort of stayed the same.

Not that it makes it good, but --

        THE COURT:  Again, that's what I'm concerned about.

        MR. GINSBERG:  Yes.

        THE COURT:  It seems his substance abuse started when

he was 18.  Every single one of his convictions was for

F3V3SANS                        Sentence

1    something to get money.  Right?  Every single one of them.  The

2    burglary in the third degree, back in 1999.  He didn't get any

3    criminal history points for that.  The criminal sale of

4    marijuana in the fourth degree in 2004, that's for money.  The

5    robbery in the third degree in April of 2004, that's for money.

6    The criminal possession of marijuana in the third degree, that

7    seems to be for money.  Maybe it's all personal use and he

8    smokes a whole lot of weed.  That seems to me that's about

9    money as well.  And the robbery in the first degree in 2006 was

10   about money.  And this rash of burglaries was about money.  And

11   that's, again, what I'm concerned about, is it seems that he

12   hasn't learned his lesson after all of these times and that's

13   what I'm really concerned about.  He hasn't demonstrated he's

14   learned his lesson.

15        MR. GINSBERG:  I understand that, your Honor.  While

16   the pattern or the nature of the crimes is significant, I think

17   the question or the statement your Honor just posed is the

18   ultimate one.  That is, you could look at that and say he

19   hasn't learned, he's been in jail before, he's gotten out, he's

20   been on supervision, and he committed additional crimes.  True.

21   And that means he deserves to be put in jail for this crime for

22   a significant period of time.  But I think ultimately the

23   question is what that means.  What is a significant amount of

24   time enough to punish him, to specifically deter him, and does

25   it need to be what the guidelines says or can it be something

1    less.

2              At the end of the day, we all recognize that, to some

3    degree, the guideline numbers are always arbitrary, they were

4    created on a good faith basis by a sentencing commission, but

5    the numbers could have been 10 months higher this way or one

6    year lower this way.  So, that's not a magic number.  Nor is

7    what I'm asking for.  But what I am saying is, even with your

8    Honor's concern, even with the crimes that he's committed, and

9    the pattern, given his serious demonstration more recently and

10   the fact that he's somewhat older, the sentence doesn't have to

11   be as harsh as a guideline sentence in this case would dictate.

12   There is another sentence or sentences that would be sufficient

13   and appropriate.

14              So in a sense, I'm not disagreeing with anything your

15   Honor is saying.  I concede it has to be a significant

16   sentence.  But I think the number that's in the guidelines

17   based upon the calculations is more than is necessary for this

18   case.

19              So, again, that's I think the best answer I can give

20   without looking into the future and knowing what David Santiago

21   is going to be doing six, seven, eight years from now which

22   none of us can.  My hope is he's going to be taking other

23   courses outside of jail, and taking care of his family, and

24   getting out of this position that he's put himself in over

25   quite some period of time.

F3V3SANS                          Sentence

1          THE COURT:  Thank you.  Let me hear from the

2    government.

3          MR. MASIMORE:  Your Honor, I think we're arriving at

4    the question of, well, what is so special about the guidelines

5    range 120 to 150.  I think putting even aside the guidelines

6    calculation, I think the Court could look at his previous

7    sentence here.  He's 25 years old, he's sentenced to 60 months

8    in prison.  Five years.  Now, a few years later he's 31, a

9    Court would be well justified to double the sentence and say to

10   somebody, look, every time you come back into court, every time

11   you commit more crimes after serving a sentence, we are just

12   going to double the sentence until we arrive at the sentence

13   that's long enough to actually persuade you not to commit any

14   more crimes.  So, from that perspective, 120 months is

15   completely reasonable because it is simply a doubling of the

16   previous sentence that was imposed that was not sufficient to

17   dissuade him from committing crimes.

18         I think though, also, if the Court looks at some of

19   the other sentences that have been rendered in this case, just

20   yesterday Mr. Vallejo received a 70 month sentence.  His level

21   of participation was very similar to Mr. Santiago, but he was

22   criminal history category I.  He hadn't the demonstrated

23   recidivism that we're faced with here, and he received 70

24   months.  So a sentence even at the low end of the guidelines

25   range here would only be 50 months more than that.

F3V3SANS                        Sentence

1          We have another defendant, Esfrain Silva, who was

2     sentenced by Judge Griesa.  He received a sentence of 84 months

3     in prison.  He wasn't involved for as long as a time frame.

4     His main issue was that once he was arrested in this case, he

5     then actually committed more burglaries.  In that sense it is

6     very similar in terms of he was a demonstrated recidivist.  His

7     criminal history category was less than Mr. Santiago's.  He

8     received 84 months.  A 120 month sentence in this case would

9     only be 26 months more than that.  It would certainly be

10     justified by the difference in criminal history.  It would also

11     be justified by the difference in the character of the previous

12     crimes.  The previous violence that this defendant has

13     committed.

14          So I think your Honor is focusing on what seems to be

15     in this case probably the most significant factor in

16     determining a sentence.  I think based on some of the facts I

17     I've talked about here, I think that's why a sentence within

18     the guidelines range actually does sort of get us to where

19     would be sufficient but not greater than necessary to account

20     for that factor, and other factors in the case.

21          THE COURT:  Mr. Santiago, I'll give you an opportunity

22     to address me.  You don't have to say anything, but if you'd

23     like, now is your opportunity.

24          THE DEFENDANT:  Should I stand?

25          THE COURT:  You can stay seated if you'd like.

F3V3SANS                    Sentence

THE DEFENDANT:  I actually wrote something down, but I don't want to go by.  I'm just going to speak what I feel.

As I was growing up, I had a lot of issues in my life. And he may say I'm a violent individual, but the person that I was 10, 11 years ago is not the person that I am today.  When I was committing the violent acts, I was misguided.  I wasn't really -- I wasn't really well in mind what I was doing.  I thought everything was right.  Not knowing that what I was doing was wrong.  I was younger, immature, and as I wrote to you in my letter, I told you that actually coming to prison made me the man that I wasn't.  And I say to say that because I didn't have no guidance.  I didn't have no kind of guidance.  I didn't have a father figure.  And the case that I actually did the time for, the five years for, was actually a case that I committed earlier in time, when I was younger and immature and dumb.

As I went to prison, I learned a lot.  Yes, you say that your main issue is you don't want me to continue doing crimes.  I can't say for certain right now what will happen in the future because nobody will know that.  Nobody can dictate the future.  All I can say is that I'm not, I'm not perfect. And nobody in this world is perfect.  And I've made valuable mistakes that have caused a lot of pain and suffering to my family.  Not only to me, but to my family, and I feel ashamed and embarrassed for doing these kind of acts.

1          I'm not telling you to let me go.  I'm not telling you

2     to give me 10 years.  I'm not telling you to give me in

3     between.  I'm telling you just to try something and see what

4     will come out of it.  I want you to look at me five years, six

5     years from now and say I helped this man in a way, and I'm

6     proud for it because he's successful.  I don't want you to see

7     me seven, eight years from now and be like he did this and he

8     came back here.

9          And you have all the right to do what is necessary at

10    the moment.  But, the violent person that I once was, I can't

11    say I am today.  Because I've been incarcerated in MCC for 17

12    months, and to be honest with you, I haven't gotten into one

13    violent incident.  So I don't see where's the violence.  And

14    everyone knows who have been around the prison system long

15    enough, knows that trouble is always lurking in prison.

16    Whether it is for the littlest stuff or for the bigger stuff.

17    And I have managed 17 months without altercations, whether it

18    was with staff or other inmates.  I have kept myself busy,

19    teaching others, how to persuade, pursue a better life.  You

20    know that this life ain't working.

21          I used to hear about the Feds as I growing up.  I used

22    to hear about it all time.  It is the worse place to be.  I'm

23    here.  I don't want anybody else to live it.  No.  But I'm not

24    a violent person that I used to be.  I was a violent person at

25    one point in my life.  I'm not going to take that away from me.

F3V3SANS                        Sentence

1    But the person that I am today is a totally different David

2    than I was 10, 12 years ago.

3            I had no guidance.  No guidance whatsoever.  When I

4    talk to Lee, I explained to him, I tell him all the time, I

5    look at him as a father figure because I didn't have a father

6    to tell me from right or wrong.  I struggle with that with my

7    son all the time.  That there will be issues in life, I

8    can't -- we will never know that until the time comes.  The

9    future is always uncertain.  And we all know that.

10           I made valuable mistakes here.  And you know, I see

11   that you should punish me, yeah, for my wrongdoing.  I want to

12   correct my wrong ways.  I want to get enrolled in programs,

13   drug treatment.  I want to do the right thing, but I want to do

14   it for me.  I don't want to do it because I'm coming in front

15   of you or anybody else.  I want to do it to better myself.  I

16   don't want to make my family to go through the grief.

17           It is not easy.  It is hard where I come from.  I'm

18   surrounded by poverty.  There is nothing else I can do. I tried

19   the easy way out.  As I can see, it definitely wasn't working.

20   I just want a better life.  I'm not telling you to let me go or

21   anything like that.  Just be considerate.

22           Thank you, your Honor.

23           THE COURT:  Thank you.  I'll be back.  Let me think

24   about this for a moment.

25           (Recess)

F3V3SANS                    Sentence

1           THE COURT:  Mr. Santiago, are you ready for

2    sentencing?

3           THE DEFENDANT:  Yes, your Honor.

4           THE COURT:  Are you satisfied with your legal

5    representation up to this point?

6           THE DEFENDANT:  Yes, your Honor.

7           THE COURT:  Defense counsel, is there any reason why

8    sentence should not be imposed?

9           MR. GINSBERG:  No, your Honor.

10          THE COURT:  Counsel for the government, any reason why

11   sentence should not be imposed?

12          MR. MASIMORE:  No, your Honor.

13          THE COURT:  Let me hear from the government regarding

14   restitution in this case.

15          MR. MASIMORE:  Your Honor, we'd ask for the 90-day

16   statutory period to submit restitution.  With respect to

17   forfeiture, there was an agreed-upon forfeiture order, a

18   consent order that would become final if the Court pronounces

19   it.

20          THE COURT:  Defense counsel, any objection to that?

21          MR. GINSBERG:  No, your Honor.

22          MR. MASIMORE:  It was principally a $500,000 money

23   judgment and forfeiting the right to the automobiles that were

24   listed.

25          THE COURT:  Do you have a copy of that order?

F3V3SANS                        Sentence

1              MR. MASIMORE:  I do, your Honor.

2              THE COURT:  I note that I have the authority to

3       downwardly depart under the guidelines.  I also have the

4       authority to vary under the guidelines under the factors of 18

5       U.S.C. 3553, and I have considered all of the factors in 18

6       U.S.C. 3553.

7              Regarding forfeiture, I will announce that

8       Mr. Santiago has agreed to forfeit as pertaining to counts one

9       and two property, real or personal, which constitutes or is

10      derived from proceeds traceable to such offense, including, but

11      not limited, to $500,000 in United States currency,  a 2010

12      Mercedes Benz ML 63 AMG bearing VIN 4JGBB7HBXAA561332, a 2010

13      Mercedes Benz 63 AMG bearing VIN WDDNG7HB3AA310953.  A 2005

14      Dodge Magnum RT bearing VIN 2D8GV582X5H649022.  And a 2005

15      Honda Odyssey Touring bearing VIN 5FNRL38875B072204.

16             I will impose the special assessment for both counts

17      in the total amount of $200.  I will not impose a fine.

18             In terms of supervised release, I will sentence

19      Mr. Santiago to three years for counts one and two with each

20      term of supervised release to run concurrently.  That's for the

21      supervised release term.  I will impose the mandatory

22      conditions of supervised release.  I will impose the standard

23      conditions of supervised release one through 13 with the

24      following special conditions:  That he participate in a program

25      approved by the probation office, which program may include

F3V3SANS                              Sentence

1     testing to determine whether Mr. Santiago has reverted to using

2     drugs or alcohol.  I authorize the release of available drug

3     treatment evaluations and reports to the substance abuse

4     treatment provider as approved by the probation officer.

5     Mr. Santiago will be required to contribute to the costs of

6     services rendered in an amount determined by the probation

7     officer, based on ability to pay or availability of the

8     third-party payment.  Mr. Santiago shall submit his person,

9     residence, place of business, vehicle, or any other premises

10    under his control to a search on the basis that the probation

11    officer has reasonable belief that contraband or evidence of a

12    violation of the conditions of the release may be found.  The

13    search must be conducted at a reasonable time and in a

14    reasonable manner.  Failure to submit to a search may be

15    grounds for revocation.  Mr. Santiago shall inform any other

16    residents that the premises may be subject to search pursuant

17    to this condition.

18            Mr. Santiago is to report to the nearest probation

19    office within 72 hours of release from custody.  And

20    Mr. Santiago should be supervised by the district of residence.

21    I will not impose a curfew.

22            Regarding the term of custody.  Mr. Santiago, you have

23    a lot of community support here.  You have a lot of support

24    from your family and your friends, and I hope that you continue

25    to lean on that support.  You have a lot of potential and the

F3V3SANS                          Sentence

1    ability to do a lot of positive things.  I know you have been

2    taking advantage of some of the programs that have been offered

3    to you while you've been in custody.

4           But one thing that you're going to need to do

5    eventually is really kind of change the way you view your

6    opportunities and change the way that you view perhaps

7    yourself.

8           You indicated when you spoke to me, and I took to

9    heart everything that you said, and I do not believe -- let me

10   make this clear -- I do not believe that you are a menace to

11   society or anything like that.  I am very cognizant of the need

12   to give people second chances.  But for you, this is more than

13   a second chance.  You've been given second chances over and

14   over and over again.  You indicated to me that you're

15   surrounded by poverty and you felt like you had no choice.  And

16   I want to make sure that you understand that you do have

17   choices.  And yes, it is going to be difficult with a limited

18   education and limited skill sets.  Not to say that you don't

19   have some education, because the GED is very important.  And

20   you do have some skills.  You do have the skills in flooring

21   and tile and I hope that you're able to maintain some other

22   skills.  There are opportunities for you to get gainful

23   employment.  I am not trying to sugar coat things.  I know it

24   will be difficult as a convicted felon to do that.

25          If your goal is to find some sort of opportunity where

F3V3SANS                              Sentence

1  you can make thousands and thousands and thousands of dollars

2  quickly, you are correct, there are not very many choices for

3  that.  And if that is still your goal, you're probably going to

4  find yourself back in my courtroom or another courtroom.

5          And I know it is difficult if you're surrounded by

6  poverty and if you grew up in poverty to see other people with

7  all these great material things and think that you need to be

8  subjected to continue to live a life of poverty or at least not

9  have all the flashy things that other people have.  But there

10  is a lot of middle ground between living in abject poverty and

11  living the lifestyles of the rich and famous.  And I'm not

12  saying that at some point maybe you might not get there.  You

13  might get there at some point.  Perhaps this clothing line that

14  you are working on, perhaps that will get you there at some

15  point.  But those things take time.  There are no quick fixes.

16  If you're still relying on quick fixes, you are going to end up

17  again in my courtroom or somebody else's courtroom, and you are

18  going to continue to cause pain and suffering to the people who

19  have been here supporting you who have written all these

20  wonderful letters of support, who are here today to support

21  you.  But most important, you are going to hurt yourself.

22          I do not enjoy sending people to jail.  I do not enjoy

23  sentencing people to long periods of time in jail.  I know what

24  jail can do to individuals, I know what jail can do to

25  individuals' families.  But I feel, given the recidivism that

1   you've shown, that I need to impose a sentence that is serious

2   and I hope that you get the message.

3          Again, the purpose of me sentencing you to the

4   sentence that I am going to sentence you to is not because I

5   think that you are a menace to society.  That is not the reason

6   that I'm doing this.  I am not doing this to treat you as some

7   statistic and simply throw you away.  I am being very, very

8   cognizant of you, your background, the things that I've seen

9   about you in this presentence report, the things that I've seen

10  about you from the letters that have been submitted by your

11  family.  And I know that it can be painful growing up without a

12  father figure.  And perhaps you're still looking for that at

13  some level.  You've indicated that Mr. Ginsberg has been like a

14  father figure to you.  But, at this point in your life, you've

15  got to figure out a way to move beyond that, because instead of

16  looking for a father figure, you have to make sure that you are

17  a father -- beyond just a father figure, but a father to your

18  children.  You'll have to figure out some kind of way to -- I

19  don't want to sound callous -- but you've got to let that go.

20  You've got to figure out a way to heal from that and direct

21  yourself, because you do have the ability to do some very

22  positive things and you have a lot of community support.  But

23  you've got to find the drive within yourself to make sure that

24  you make the right decisions.

25          So, for Count Two, I am going to sentence you to a

term of custody of 128 months.  And for Count One, I am going

to sentence you to a term of custody of 120 months.  And those

terms should run concurrently with each other.

   Are there any open counts?

   MR. MASIMORE:  The government moves to dismiss all

open counts with respect to this defendant.

   THE COURT:  That is granted.

   Mr. Santiago, that is the sentence of the Court.

Again, I hope that you take what I've said to heart.  I know

that you're disappointed in the sentence that I have imposed

here.  I hope that you will continue to reach out to your

family for support while you're in custody.  And I sincerely

hope that when you are released from custody, that you can stay

on the straight and narrow.

   I'd like to thank all the members of Mr. Santiago's

family and friends for their letters and for showing their

support here as well.

   You have a statutory right to appeal.  There are

certain time constraints on your ability to appeal.  You should

talk to your lawyer about that.

   Is there anything else from the government?

   MR. MASIMORE:  No, your Honor.

   THE COURT:  Anything else from the defense?

   MR. GINSBERG:  Yes, your Honor.  I'd ask your Honor to

recommend that Mr. Santiago be given the opportunity to

F3V3SANS                          Sentence

1   participate in the alcohol and drug abuse program of the bureau

2   of prisons.  And I'd also ask that your Honor recommend that he

3   be placed in either Fort Dix or another facility close to the

4   New York City area.

5            THE COURT:  Okay.  I will do that.  Anything else?

6            MR. GINSBERG:  No, your Honor.

7            THE COURT:  Thank you.

8                              o0o

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25